**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **CLAUDIA DELSASSO** : | **CIVIL ACTION NO.: 3:14-cv-00063-RNC** |
| **Plaintiff** : | |
| : | |
| **versus** : | |
| : | |
| **1249 WINE BAR,LLC;** : | |
| **NELSON VIEGA;** : | |
| **ALEXANDER RUGGIERO; and** : | |
| **JAMIE WEBB;** : | |
| **Defendants** : | **April 2, 2014** |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### *JURISDICTION*

1. This is an action for damages, declaratory and injunctive relief, punitive

   damages, compensatory damages, and attorney's fees brought pursuant to Title

   VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq ("Title VII"), and the

   Connecticut Fair Employment Practices Act ("CFEPA"), Connecticut General

   Statutes ("C.G.S.") §46a-60, et seq.

2. The Plaintiff, Ms. Claudia DelSasso ("Ms. DelSasso" or "Plaintiff") brings this

   action for discrimination and unlawful retaliation against her employer, 1249 Wine

   Bar, LLC. ("1249" or "Defendant"), in violation of Title VII, CFEPA; and against

   1249; Nelson Viega ("Viega"); Alexander Ruggiero ("Ruggiero"); and Jamie

   Webb ("Webb") (collectively "Defendants") for defamation.

3.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343 with

    respect to the state law claims this Court has supplemental jurisdiction pursuant

    to 28 U.S.C. §1367, in that the state law claims are so related to the federal

    claims that they form part of the same case or controversy under Article III of the

    United States Constitution.

## *VENUE*

4.  Venue in this district is appropriate pursuant to 28 U.S.C. §1391, because this is

    the district in which the discriminatory conduct occurred and the cause of action

    arose.

## *ADMINISTRATIVE PROCEEDINGS*

5.  On or about December 21, 2012 the Plaintiff commenced administrative actions

    against 1249 with the Connecticut Commission on Human Rights and

    Opportunities ("CHRO"), case number 1330235, and the Equal Employment

    Opportunity Commission ("EEOC"), case number 16A-2013-00581, alleging, *inter*

    *alia,* that 1249 had discriminated against her on the basis of her sex (sexual

    harassment) and retaliation against Plaintiff for her protected activity (opposing

    discriminatory employment practice).

6. On or about October 22, 2013, CHRO issued a letter of release in reference to the above captioned matter.  Said letter is attached hereto as Attachment 1.

7. On or about January 15, 2014, EEOC issued a Notice of Right to Sue in reference to the above matter.  Said letter is attached hereto as Attachment 2.

### *PARTIES*

8. Plaintiff is a citizen of the United States and resident of Connecticut and currently resides at 56 Sills Drive, Oakville, CT 06779.

9. At all times relevant to this Complaint, the Plaintiff was an employee of 1249, as that term is defined by Title VII, 42 U.S.C. §2000e(f). and CFEPA, C.G.S. §46A-51(9).

10. The Defendant 1249 is a restaurant.

11. The Defendant Viega is an owner or consultant to 1249.

12. The Defendant Ruggiero is the executive chef at 1249.

13. The Defendant Webb is a manager, partner or consultant at 1249, and the manager of The Good Life Wine & Spirits, LLC, a Connecticut company with a business address of 1249 West Main Street, Waterbury, CT 06708, of which Viega is the Managing Member.

14. Defendants have a principal place of business located at 1249 West Main Street, Waterbury, CT 06708.

15. 1249 is an employer as that term is defined in CFEPA, C.G.S. §46A-51(10) and Title VII, 42 U.S.C. §2000e(b).

16. 1249 employs in excess of fifteen (15) employees.

## *FACTS*

17. In or about January 2012, Plaintiff began working for the Defendants as a server.

18. Plaintiff initially reported directly Lisa Sanseverino, and later to CJ Nicknair ("Nicknair"), the restaurant managers.  Plaintiff also reported to Chef Alex Ruggiero ("Ruggiero"), as well as to the kitchen manager Daniel Mina ("Mina").  Plaintiff also reported to Viega.  Plaintiff understood that Viega was the owner of the restaurant.

19. Plaintiff's job duties included waiting on customers, bringing food from the kitchen to customers in the dining room, occasional bartending, and processing customers' payments for their orders.

20. As a regular part of her job duties, Plaintiff was required to go into the kitchen to speak with the kitchen staff and to pick up food and other items for customers.

21. On multiple occasions during her employment at 1249, Plaintiff was subjected to unwelcome touching and comments of a sexual nature from two employees, Rodrigo Rojas ("Rojas") and Brian Hughes ("Hughes"), who both worked at 1249 in the kitchen.

22. Rojas began working at 1249 sometime during the summer of 2012.  Shortly after Rojas began working at 1249, Rojas began calling Plaintiff "mommy" and touching her.  Plaintiff told Mina that she did not like Rojas calling her "mommy"

or touching her.  Mina told Plaintiff that he would take care of it and would speak

with Rojas.  Rojas stopped touching Plaintiff and stopped calling her "mommy"

for a short period of time, but began again in or around September 2012.

23. On multiple occasions from September through November 2012, Rojas would

follow Plaintiff into the walk-in refrigerator and the electronics room which housed

the restaurant's music system, and Rojas would grab her waist and buttocks and

brush up against her breasts.  Rojas also stroked the back of Plaintiff's neck

when she was bringing dishes into the kitchen.  On one occasion, Ruggiero was

present when Rojas stroked Plaintiff's neck and Ruggiero slapped Rojas's hand

away from Plaintiff's neck.  On one occasion, Rojas also approached Plaintiff

from behind as she was picking up food from the kitchen and put his arms all the

way around Plaintiff's waist and firmly grasped Plaintiff's body and pressed his

body into hers, and Plaintiff had to push him off of her.  On multiple occasions

Rojas made kissing gestures directed toward Plaintiff.  Rojas also frequently

called Plaintiff "mommy" instead of using Plaintiff's name.  On each occasion,

Plaintiff told Rojas to stop, and told him that she did not like his behavior.

24. In and around late September through November 2012, Hughes also made

inappropriate sexual comments to Plaintiff about Plaintiff and other female

employees.  Hughes asked Plaintiff if she wanted to join him in having sex with

him and another female, and asked Plaintiff to join him in a party on Halloween

where the guests would all be having sex.  On one occasion, Hughes showed

Plaintiff a photograph of his genitals on his cell phone, and asked Plaintiff what

she thought of them.  On one occasion when Plaintiff was waiting for food in the kitchen, Hughes saw the Plaintiff and picked up his cell phone and began playing audio on his cell phone of a female moaning sexually and told the Plaintiff that she should listen to it and that he could do that to her.  Plaintiff told Hughes she did not like his comments and asked him to stop.

25. On each occasion, Plaintiff told Rojas and Hughes that their behavior was unwelcome and it made her uncomfortable.  Plaintiff verbally reported some of these incidents to Nicknair if Nicknair was available at the time.

26. Rojas' and Hughes' comments and behavior toward Plaintiff were offensive, intimidating, threatening, and unwelcome and created a hostile and abusive working environment for Plaintiff, and affected the Plaintiff's ability to perform her job.

27. On October 26, 2012, Plaintiff spoke to Ruggiero about what had occurred with Rojas and Hughes, and Plaintiff asked Ruggiero to do something to fix the situation because Plaintiff was uncomfortable working with Rojas and Hughes. Ruggiero told Plaintiff that he would rectify the situation, and he said that the conduct of these employees would not be tolerated.

28. On October 26, 2012, Plaintiff also spoke to Viega to inform him of what occurred with Rojas and Hughes.  Viega also assured Plaintiff that he would remedy the situation and that such behavior would not be tolerated.

29. Later in the day on October 26, 2012, during a routine staff meeting, Ruggiero told all the employees who were present at the meeting that there had been a complaint of sexual harassment and that such behavior must stop.

30. On or about November 2, 2012, Plaintiff was inappropriately touched again by Rojas.  Rojas also made sexual comments to Plaintiff.  Plaintiff told Rojas to stop and that she did not like his behavior.

31. Immediately after Rojas harassed Plaintiff again, Plaintiff spoke with Ruggiero, and told him what had occurred.  Ruggiero told the Plaintiff that he had witnessed Rojas stroke the back of the Plaintiff's neck and he had told Rojas not to touch the Plaintiff.  Plaintiff asked if Ruggiero had personally spoken to Rojas and Hughes about the Plaintiff's complaints about Rojas's and Hughes' behavior toward her.  Ruggiero said that he had not done so.  Plaintiff asked Ruggiero why he had not spoken with them, and Plaintiff requested that Ruggiero speak with Rojas and Hughes personally about her concerns, and Ruggiero said that he would do so.

32. On November 3, 2012, Plaintiff documented her concerns about Rojas' and Hughes' inappropriate behavior in a letter, and provided it to Viega.  Plaintiff told Viega that she had previously made these complaints verbally, and Plaintiff asked Viega to sign the letter to acknowledge that he received her complaint and asked that the letter be placed in her personnel file.  Viega told Plaintiff that he would not sign the letter but he would look it over.

33. From approximately November 4 to November 10, 2012, Plaintiff was absent from work due to family obligations.  This absence had been discussed and approved by Nicknair in advance.

34. On or about November 12, 2012, Plaintiff sent a text message to Nicknair to request Plaintiff's work schedule, because it had not been posted.  Nicknair later sent out the schedule to all employees by email.  The schedule showed Plaintiff working her normal schedule from Tuesday through Saturday, with one day off during the week.

35. On or about November 12, 2012, after Plaintiff received her work schedule, Plaintiff sent a text message to Viega to tell him that she would be working the next day, and to ask him if she could view her personnel file when she arrived at work.  Viega did not respond until the next day, after Plaintiff sent him a second text message.  Viega then responded by telling Plaintiff that they would talk when she got to work.

36. On or about November 13, 2012, Plaintiff arrived at work for her shift, and began working.  A short time later, Viega arrived and told Plaintiff that he wanted to speak with her.  Plaintiff asked Viega if she could review her personnel file to make sure that her sexual harassment complaint was in the file.  Plaintiff also told Viega that she wanted the harassment to stop so that she could be left alone so that she could just do her job.

37. During their November 13, 2012 conversation, Viega did not answer Plaintiff's question about her personnel file or her sexual harassment complaint.  Instead,

Viega told Plaintiff that he was going to "cut his losses" and fire Plaintiff.  Plaintiff asked Viega why he was firing her, and asked whether it had to do with her sexual harassment complaint.  Viega did not answer Plaintiff's question and continued to say that he was cutting his losses and that Plaintiff was fired.  Viega then told Plaintiff that there was food and money missing, and said that he had a forensic accountant look into it and the accountant found that the problem went back to the original employees.  Viega said that Plaintiff was one of the original employees, and asked if Plaintiff wanted to talk about her knowledge of the missing food and money.

38. During their November 13, 2012 conversation, Viega told Plaintiff that Chris Joy ("Joy"), a server, had been involved with the missing food and money.  Viega said that Joy admitted to Viega what he had done, and Viega asked Plaintiff if she would like to admit anything too.  On information and belief, Joy has admitted to other employees of 1249 that Joy was involved in money and food missing from 1249's inventory, and has shown employees how he was able to go into the computer system to manipulate information in the system.  On information and belief, Joy was able to make those changes using a manager's code or administrator's code for the computer system.  Plaintiff asked Viega if Joy was still employed by the restaurant, but Viega would not answer Plaintiff's question. On information and belief, and from Plaintiff's direct observation, from the beginning of Joy's employment, Joy has had multiple performance problems and

has been written up and disciplined multiple times.  Joy remained employed at 1249 following Plaintiff's termination.

39. During their November 13, 2012 conversation, Plaintiff explained to Viega that she knew nothing about any missing food or money.  Plaintiff asked Viega again about her sexual harassment complaint, and Viega responded by saying that Plaintiff was fired and that he did not want a hassle and he was cutting his losses.

40. Defendants reported to the Department of Labor on Plaintiff's unemployment paperwork that Plaintiff was terminated for lack of work.  There was no lack of work at 1249 at the time Plaintiff's employment was terminated.  On information and belief, Defendants hired at least two new servers within approximately four weeks after Plaintiff was terminated.

41. Plaintiff has no information about whether any food or money was ever actually missing from the Respondent.  If any food or money was actually missing, it was not connected to Plaintiff, or related to anything that Plaintiff did.

42. Defendants' false accusation of theft by Plaintiff and her resulting termination was a pretext for unlawful retaliation.

43. During Plaintiff's employment with Defendant, Defendant did not have a sexual harassment policy that was available for employees to read or posted for employees to view in the restaurant.  On information and belief, Defendant put up a poster regarding sexual harassment after Plaintiff's termination.

44. During Plaintiff's employment with Defendant, Plaintiff asked Liz Plefka ("Plefka"), a bookkeeper/ recordkeeper for the Defendant, for an employee handbook or copies of the company policies and procedures, and Plefka told Plaintiff that there was no employee handbook.

45. On information and belief, Viega, Webb, and Ruggeiero told 1249 employees and other individuals that Plaintiff was terminated for stealing food and money and/or other improper conduct.  Specifically, immediately following Plaintiff's termination, and for several weeks afterward, Viega, Webb, and Ruggiero informed Robert Martini, Greg Bolanger, Isandra Lopes and others that Plaintiff had been stealing food and money and that was the reason she had been terminated.  Viega, Webb, and Ruggiero told this information concerning Plaintiff's termination to individuals who had no need to know the circumstances of Plaintiff's termination.  Robert Martini, Greg Bolanger, and Isandra Lopes informed Plaintiff verbally and by text message about the information they had received from Viega, Webb, and Ruggiero concerning the Plaintiff.

46. Plaintiff was sexually harassed in violation of State and Federal laws, and Plaintiff made the Defendants aware of the harassment by her verbal and written complaints.

47. Plaintiff was retaliated against and her employment was terminated by the Respondent because she had made sexual harassment complaints.

48. As a result of Defendants' discriminatory conduct, Plaintiff has suffered economic and non-economic damages, embarrassment and humiliation, loss of

employment opportunities, damage to her personal and professional reputation, and has been forced to incur attorneys' fees and costs.

### FIRST CAUSE OF ACTION- Title VII Discrimination (Sex): v. 1249

49. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 48 of this Complaint with the same force and effect as if set forth herein.

50. By the actions alleged herein, 1249 has discriminated against the Plaintiff on the basis of sex in violation of Title VII, 42 U.S.C §2000e-2(a)(1).

51. The unwelcome touching and groping, the sexually suggestive comments, and the overtly sexual comments that Plaintiff experienced during her employment at 1249 created a hostile work environment.

52. By the above-described conduct, 1249 engaged in discriminatory conduct, with malice or reckless indifference to the Plaintiff's federally protected rights.

53. As a result of 1249's unlawful conduct, the Plaintiff has suffered economic and non-economic damages, lost compensation, and other rights, privileges, and conditions of her employment, and has been forced to incur attorneys' fees and costs.

### SECOND CAUSE OF ACTION- Title VII Discrimination (Retaliation): v. 1249

54. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 53 of this Complaint with the same force and effect as if set forth herein.

55. 1249, in its treatment of Plaintiff and its termination of her employment, has discriminated against the Plaintiff because of her opposition to the discrimination she received based on her sex and sexual harassment in violation of Title VII, 42 U.S.C §2000e-3(a).

56. Plaintiff engaged in protected activity under Title VII when she opposed Hughes and Rojas's sexual harassment and reported the unwelcome touching and sexual comments they made to Plaintiff to Mina, Nicknair, Ruggiero, and Viega.

57. 1249 was aware of Plaintiff's protected activities.  1249 became aware of the Plaintiff's protected activities when she complained to Mina, Nicknair, Ruggiero and Viega verbally and in writing.

58. 1249 responded to Plaintiff's protected activities by accusing her of theft, terminating her employment, and spreading the false accusations of theft.

59. As a result of 1249's unlawful conduct, the Plaintiff has suffered economic and non-economic damages, lost compensation, and other rights, privileges, and conditions of her employment, and has been forced to incur attorneys' fees and costs.

**THIRD CAUSE OF ACTION- CFEPA Discrimination (Sex): v. 1249**

60. Plaintiff repeats and re-alleges each and every allegation contained in
    Paragraphs 1 through 59 of this Complaint with the same force and effect as if
    set forth herein.

61. By the actions alleged herein, 1249 has discriminated against the Plaintiff on the
    basis of sex in violation of CFEPA, C.G.S. §46a-60(8).

62. The unwelcome touching and groping, the sexually suggestive comments, and
    the overtly sexual comments that Plaintiff experienced during her employment at
    1249 created a hostile work environment.

63. By the above-described conduct, 1249 engaged in discriminatory conduct, with
    malice or reckless indifference to the Plaintiff's rights under Connecticut law.

64. As a result of 1249's unlawful conduct, the Plaintiff has suffered economic and
    non-economic damages, lost compensation, and other rights, privileges, and
    conditions of her employment, and has been forced to incur attorneys' fees and
    costs.

### FOURTH CAUSE OF ACTION-CFEPA Discrimination (Retaliation): v. 1249

65. Plaintiff repeats and re-alleges each and every allegation contained in
    Paragraphs 1 through 64 of this Complaint with the same force and effect as if
    set forth herein.

66. 1249, in its treatment of Plaintiff and its termination of her employment, has
    discriminated against the Plaintiff because of her opposition to the discrimination

she received based on her sex and sexual harassment in violation of Title VII, 42 U.S.C §2000e-3(a).

67. Plaintiff engaged in a protected activity under Connecticut law when she opposed Hughes and Rojas's sexual harassment and reported the unwelcome touching and sexually suggestive comments they made to Mina, Nicknair, Ruggiero and Viega.

68. 1249 was aware of Plaintiff's protected activities.  1249 became aware of the Plaintiff's protected activities when she complained to Mina, Nicknair, Ruggiero and Viega verbally and in writing.

69. 1249 responded to Plaintiff's protected activities by accusing her of theft, terminating her employment, and spreading the false accusations of theft.

70. As a result of 1249's unlawful conduct, the Plaintiff has suffered economic and non-economic damages, lost compensation, and other rights, privileges, and conditions of her employment, and has been forced to incur attorneys' fees and costs.


## FIFTH CAUSE OF ACTION- Defamation: v. 1249; Ruggerio; Webb and Viega

71. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 70 of this Complaint with the same force and effect as if set forth herein.

72. The Defendants, 1249, Ruggerio, Webb, and Viega, published or caused to be published, false information concerning the Plaintiff.

73. As a result of the Defendants' unlawful conduct, the Plaintiff has suffered economic and non-economic damages, damage to her personal and professional reputation, embarrassment, humiliation, and has been forced to incur attorneys' fees and costs.

Respectfully submitted,
THE PLAINTIFF

/s/ Robert Fortgang
Robert Fortgang
ct5437
Robert Fortgang Associates, LLC
Greystone Court
573 Hopmeadow Street
Simsbury, CT  06070
(860) 658-1055
rob@fortgangemploymentlaw.com

## REQUEST FOR JURY TRIAL

The Plaintiff requests a trial by jury as to all claims to which she is entitled under the law.

Respectfully submitted,
THE PLAINTIFF

/s/ Robert Fortgang
Robert Fortgang
ct5437
Robert Fortgang Associates, LLC
Greystone Court
573 Hopmeadow Street
Simsbury, CT  06070
(860) 658-1055
rob@fortgangemploymentlaw.com

## DEMAND AND RELIEF

WHEREFORE, the Plaintiff respectfully request this Court grant the Plaintiff the following relief:

    a.  Declaring that the acts and practices complained of herein are in violation of state and federal anti-discrimination laws;

    b.  Directing the Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

    c.  Directing the Defendants to make Plaintiff whole for all earnings she would have received but for the Defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, pensions, and other lost benefits;

    d.  Awarding Plaintiff compensatory, liquidated and punitive damages for the Defendant's discriminatory, retaliatory, and defamatory conduct;

    e.  Awarding Plaintiff the costs of this action together with reasonable attorneys' fees.

    f.  Granting such other and further relief as this Court deems necessary and proper.

> Respectfully submitted,
> THE PLAINTIFF
>
> /s/ Robert Fortgang
> Robert Fortgang
> ct5437

Robert Fortgang Associates, LLC
Greystone Court
573 Hopmeadow Street
Simsbury, CT  06070
(860) 658-1055
rob@fortgangemploymentlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 2nd day of April 2014, a copy of the foregoing

document was filed electronically.  Notice of this filing will be sent by email to all parties

who have appearances as of the time of this filing, by operation of the Court's electronic

filing system or by mail to anyone unable to accept electronic filing as indicated on the

Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF

System.

/s/ Robert Fortgang
Robert Fortgang, ct5437
Robert Fortgang Associates, LLC
573 Hopmeadow Street
Simsbury, CT 06070
Tel: (860) 658-1055
Fax: (860) 658-0565
E-mail: rob@fortgangemploymentlaw.com