```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

CLAUDIA DELSASSO,                   :
                                    :
     Plaintiff,                     :
                                    :
v.                                  :    Case No. 3:14-cv-63 (RNC)
                                    :
1249 WINE BAR, et al.,              :
                                    :
     Defendants.                    :
```

RULING AND ORDER

Plaintiff Claudia DelSasso brings this action pursuant to Title VII and Connecticut law against her former employer, 1249 Wine Bar ("Wine Bar"), a Waterbury restaurant, and three members of Wine Bar management, claiming she was sexually harassed at work, terminated in retaliation for complaining about the harassment, and defamed after the termination. Defendants have moved for summary judgment on all three claims. For reasons that follow, the motion is denied.

I.   Background

The parties' submissions show the following. Wine Bar opened for business in January 2012. Plaintiff began working as a server at Wine Bar soon after it opened. Defendants Jamie Webb and Nelson Veiga were consultants involved in managing the restaurant. Defendant Alex Ruggiero was the Executive Chef. Rodrigo Rojas and Brian Hughes (also referred to as "Brian Hurst") worked in the restaurant's kitchen.

Plaintiff alleges that she was harassed by Rojas and Hughes

1

throughout the summer and fall of 2012. She has testified that the incidents of harassment included Rojas making kissing gestures at her, calling her "mommy" or "mami," grabbing her buttocks, grabbing her waist and pressing himself against her, stroking the back of her neck, and touching her legs and hips. She also testified that Hughes showed her a photograph of his genitals, asked her to engage in group sex with him, and played audio on his cell phone of a woman moaning as if engaged in sexual intercourse.

Plaintiff alleges that she spoke to Ruggiero and Veiga about the harassment on multiple occasions. They responded that harassment would not be tolerated and the problem would be addressed immediately. On October 26, 2012, at a pre-dinner staff meeting, Ruggiero stated that sexual harassment was not permitted and staff members were expected to respect each other's space. Veiga also spoke with both Rojas and Hughes about plaintiff's allegations.

According to plaintiff, the harassment continued, and on November 3, 2012, she asked Veiga to place a document in her personnel file setting forth her complaints. Plaintiff was absent from work the following week due to a family emergency. When she returned to work on November 13, Veiga confronted her about missing food and money, and she denied any wrongdoing. During that meeting, plaintiff's employment was terminated.

Defendants contend that in the summer of 2012, accountants informed Wine Bar's management that the restaurant was buying more food than it was selling.  According to defendants, they began investigating the problem that summer.  Defendants also assert that by September 2012, Wine Bar's management determined they needed to reduce the number of wait staff because of financial difficulties.  Defendants contend that, on November 3, 2012, Ruggiero noticed a record of a transaction showing that the plaintiff had served two entrees that did not appear on the customers' bill.  This prompted review of plaintiff's computer entries, which revealed other suspicious transactions in which food items were deleted from bills by improper use of a manager's code.  Plaintiff's termination followed.

II.  Discussion

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must point to evidence that would permit a jury to return a verdict in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  In determining whether this standard is met, the evidence must be viewed in the light most favorable to the non-moving party.  Id. at 255.

Defendants submit that this is not a case of workplace discrimination or retaliation, but rather a case in which an employee who had been caught stealing fabricated a harassment claim to try to save her job.  A jury could agree with this view of the matter and reject the plaintiff's claims.  As explained below, however, the evidence in the record, viewed most favorably to the plaintiff, would permit a jury to find in her favor.

A. <u>Hostile Work Environment</u>

Plaintiff's hostile work environment claim requires a two-part showing: the alleged harassment was "sufficiently severe or pervasive" as to "alter the conditions of [her] employment and create an abusive working environment"; and the employer may be held liable for the harassment.  <u>Redd v. New York Div. of Parole</u>, 678 F.3d 166, 175, 182 (2d Cir. 2012).  Defendants contend that the record does not support a finding for plaintiff on either prong, especially because some of her allegations are unexhausted and therefore may not be considered.

Beginning with the issue of exhaustion, defendants point out that plaintiff's administrative filings list "October 2012" as the "earliest" date of the alleged discrimination, Defs.' Mot., Ex. P (ECF No. 45-19), and "[i]n or about October 2012" as the time frame of the alleged harassment.  Defs.' Mot., Ex. D (ECF No. 45-6) ¶ 9.  On this basis, defendants contend that any evidence concerning alleged harassment occurring prior to October

2012 must be ignored.

The record is not clear regarding the exact timing of the alleged incidents of harassment. At her deposition, plaintiff testified that the harassment occurred "between September and November," with the Rojas incidents taking place "over the summer" and "continu[ing] into September through November," and the Hughes incidents taking place "September through November." Pl.'s Dep. (ECF No. 47-3) at 109.

Given this record, defendants' exhaustion argument is unavailing for two reasons. First, plaintiff's testimony concerning instances of harassment occurring prior to October 2012 does not serve to raise a new unexhausted claim, but instead supports the harassment claim in her administrative filings. Second, even if plaintiff's testimony concerning instances of harassment prior to October 2012 serves to raise a new claim, the claim is not barred for failure to exhaust because it is "reasonably related" to the claim in her administrative filings. See Deravin v. Kerik, 335 F.3d 195, 200-01 (2d Cir. 2003).[1] A new claim is "reasonably related" if the

---

[1] This standard reflects the "loose pleading" acceptable in administrative proceedings. See id. at 202. Defendants contend that plaintiff should be held to a stricter standard because she was represented by counsel in the administrative process. The cases they cite are distinguishable. In Zawacki v. Realogy Corp., the plaintiff was trying to sue for retaliation in addition to discrimination, even though her administrative charges included only discrimination. 628 F. Supp. 2d 274, 284 (D. Conn. 2009). The other two cases involve a different exception to the exhaustion requirement. Robinson v. City of New

administrative complaint gave the agency "adequate notice to investigate" the conduct at issue.  Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006).  An investigation of plaintiff's administrative complaint could reasonably be expected to encompass instances of alleged harassment by Rojas and Hughes that occurred at the restaurant in the summer and fall of 2012.  See Wilson v. Family Dollar Stores, No.06CV639(DGT), 2007 WL 952066, at *7 (E.D.N.Y. Mar. 29, 2007).

Turning to the elements of plaintiff's hostile work environment claim, she must prove that the workplace was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."  Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013).  This standard requires her to show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment."  Id.  This standard is not so stringent "that employers are free from liability in all but the most egregious of cases."  Dawson v. Cty. of Westchester, 373 F.3d 265, 273 (2d Cir. 2004).  At the same time, the standard should not be applied in a way that turns federal courts into "a court of personnel appeals."  Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002).

---

Haven, 578 F. Supp. 2d 385, 390 (D. Conn. 2008); Golnik v. Amato, 299 F. Supp. 2d 8, 14 (D. Conn. 2003).

In evaluating the sufficiency of the evidence offered in support of plaintiff's claim, it is necessary to "look to the record as a whole and assess the totality of the circumstances," Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010), giving particular attention to "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with [her] work performance." Id. In addition, plaintiff must have "subjectively perceive[d] the environment to be abusive." Id.

As the Court of Appeals has recognized, the "line" between claims that should be dismissed as a matter of law and those that should survive summary judgment "is indistinct." Redd, 678 F.3d at 177. However, claims based on "sexual assaults," "other physical contact . . . for which there is no consent express or implied," and "uninvited sexual solicitations" should survive. Id. In contrast, it is appropriate to dismiss claims based on "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." Id.

Regarding physical contact, the Court of Appeals has provided the following guidance:

> Casual contact that might be expected among friends - a hand on the shoulder, a brief hug, or a peck on the cheek - would normally be unlikely to create a hostile environment in the absence of aggravating circumstances such as continued contact after an objection. And even more

7

> intimate or more crude physical acts - a hand on
> the thigh, a kiss on the lips, a pinch of the
> buttocks - may be considered insufficiently
> abusive to be described as severe when they occur
> in isolation.  But when the physical contact
> surpasses what (if it were consensual) might be
> expected between friendly coworkers it becomes
> increasingly difficult to write the conduct off
> as a pedestrian annoyance.  Direct contact with
> an intimate body part constitutes one of the most
> severe forms of sexual harassment.

Id. (internal quotations and emphases omitted).

The Court of Appeals has emphasized that "repeated touching of intimate parts of an unconsenting employee's body is by its very nature severely intrusive" and not considered "normal" in the workplace.  Id. at 179.  Though reasonable people expect to "have their autonomy circumscribed in a number of ways" in a workplace, "giving up control over who can touch their bodies is usually not one of them."  Id.

In this case, plaintiff has testified to several incidents of unwanted touching by Rojas.  For present purposes, her testimony must be accepted as true.  One incident involved Rojas "grabbing [her] buttocks" "[w]ith his hand" when she was in the "electronics room."  Pl.'s Dep. (ECF No. 47-3) at 57-59.  On another occasion, Rojas "followed [her] into the walk-in refrigerator," where he "grabbed [her] waist and pressed himself up against [her]," such that her "back side" came into contact with "his front."  Id. at 59-61.  Plaintiff has further testified that on another occasion, when she was delivering dirty

dishes to the kitchen area, Rojas "came up from behind [her]" and "stroked [her] neck." Id. at 64.  On another occasion when she was preparing bread, he "crouched down right beside [her]" and "started to feel [her] whole front side," in the process touching her "legs and hips area" in a "caressing" manner that made her "very uncomfortable." Id. at 68-72.  And on another occasion when she walked into the kitchen, he "brush[ed] up against [her] body and [her] buttocks" with "[h]is hands." Id. at 74-80.

Plaintiff has also testified regarding multiple instances of unsolicited sexual advances by Hughes.  On one occasion, when she was picking up food in the kitchen, Hughes showed her a photograph of "[h]is genitals" and "asked [her] what [she] thought of them." Id. at 83-89.  At a different time, he "asked [her] if [she] wanted to have sex with him and another woman" and "asked [her] to engage in a Halloween-type party where everybody would be having sex." Id. at 81, 91-93, 165.  Plaintiff has further testified that Hughes "played audio of a woman moaning on his phone" "as though she was having sex" and said "'I can make you sound like that.  Do you want me to make you moan like that?'" Id. at 81, 94-97.  After plaintiff asked him to stop this behavior, it became "very difficult" for her to work with him, because he would "refuse[] to give [her] some of [her] food" and "ma[k]e it difficult for [her] to get [her] food." Id. at 97-99.  She felt "uncomfortable" and "very threatened by his

demeanor" and "his attitude," such that "it was very difficult for [her] to do [her] job when [Hughes] was on shift." Id.

Plaintiff's testimony, accepted as true and viewed most favorably to her, would permit a jury to find that the unconsented-to touchings and unwanted sexual advances she describes created a work environment that was sufficiently hostile to violate Title VII. See Hand v. New York City Hous. Pres. & Dev. Div. of Code Enf't, 605 F. App'x 42, 43 (2d Cir. 2015) (summary judgment not appropriate when plaintiff's supervisor "felt her breast and repeatedly invaded her personal space"); Barrows v. Seneca Foods Corp., 512 F. App'x 115, 119 (2d Cir. 2013) (summary judgment not appropriate when supervisor "touched [plaintiff]'s intimate body parts many times"). [2] Whether plaintiff engaged in "sexually-charged behavior" such that she did not perceive these incidents as hostile or abusive, or whether the incidents were not objectively hostile or abusive, as defendants contend, are questions that must be resolved by a jury.

---

[2] The cases on which defendants rely are distinguishable. In Mendez-Nouel, the record included two instances of touching (in addition to "workplace banter"), the more significant of which involved plaintiff's supervisor "touch[ing] his lower back for four to five seconds." 542 F. App'x 12, 13 (2d Cir. 2013). In Quinn v. Green Tree Credit Corp., the only allegation of touching was that plaintiff's supervisor once touched her breast with some papers. 159 F.3d 759, 768 (2d Cir. 1998); see also Redd, 678 F.3d at 180 (describing and distinguishing Quinn). In Mormol v. Costco Wholesale Corp., the alleged episodes of harassment did not include touching and "were few and occurred over a short span of time." 364 F.3d 54, 59 (2d Cir. 2004).

Plaintiff's evidence also raises a triable issue with regard to employer liability, the second prong of a hostile work environment claim. Employers are "not automatically liable" for sexual harassment by employees. Petrosino v. Bell Atl., 385 F.3d 210, 225 (2d Cir. 2004). In the context of alleged harassment by non-supervisory co-workers, an employer's liability requires a showing that "the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." Id. Whether an employer's response was reasonable is assessed based on "the totality of circumstances," including "the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment." Dymskaya v. Orem's Diner of Wilton, Inc., No. 3:12-CV-00388 JAM, 2015 WL 1038394, at *5 (D. Conn. Mar. 10, 2015) (internal quotation marks and citations omitted).

Defendants contend that they promptly responded to plaintiff's complaints in an adequate manner by confronting Rojas and Hughes and discussing sexual harassment at a staff meeting. The record establishes for present purposes that Veiga spoke to Rojas and Hughes shortly after receiving plaintiff's verbal complaints in late October.[3] And it is undisputed that Ruggiero

---

[3] Plaintiff denies this, Pl.'s Opp. (ECF No. 47-2) ¶ 23, but her denial is unsupported. She cites only her November 3 letter, which includes a handwritten note signed by Veiga indicating that he did speak with Rojas and Hughes. Pl.'s Opp., Ex. E (ECF No.

discussed sexual harassment at a daily staff meeting in late October.  See Pl.'s Opp. (ECF No. 47-2) ¶ 26.  Plaintiff has testified, however, that she alerted Veiga, Ruggiero and other managers to the misconduct prior to late October.  Pl.'s Dep. (ECF No. 47-3) at 49-56, 72-74.  Moreover, while she does not dispute that Ruggiero discussed sexual harassment at one daily staff meeting, she has testified that he did not broach the subject until she prompted him to do so, Rojas was not paying attention, and Hughes was not present.  Pl.'s Dep. (ECF No. 47-3) at 103-08.[4]

Crediting plaintiff's testimony, a jury could find that she complained about harassment prior to late October and the harassment continued.  And while a jury would have to find that her verbal complaints in late October were not ignored, a jury would not be compelled to find that appropriate remedial action was taken.  In these circumstances, the defendants are not entitled to summary judgment. See Antonopoulos v. Zitnay, 360 F. Supp. 2d 420, 428 (D. Conn. 2005) (summary judgment not appropriate when "reasonable jurors could disagree as to whether the corrective measures taken by defendants were effectively remedial and non-negligent"); Ayers v. State of Connecticut

---

47-7).

[4] Defendants claim that they called a special staff meeting to discuss the restaurant's sexual harassment policy, but this is disputed.

Judicial Branch, No. CIV.3:99CV935 (AHN), 2002 WL 32094365, at *3 (D. Conn. Mar. 28, 2002) (summary judgment only appropriate if record evidence "compel[s]" the conclusion that employer's response was reasonable and adequate); cf. Toyama v. Hasaki Rest., Inc., No. 13 CIV. 4892 AKH, 2014 WL 7234602, at *4 (S.D.N.Y. Dec. 18, 2014) (employer not liable for alleged touching incident when employees were instructed not to touch anybody, alleged harasser was admonished directly, and alleged harasser was never again given same work schedule as plaintiff); Bright v. Coca Cola Refreshements USA, Inc., No. 12 CIV. 234 BMC, 2014 WL 5587349, at *10-11 (E.D.N.Y. Nov. 3, 2014), aff'd sub nom. Bright v. Coca-Cola Refreshments USA, Inc., No. 14-4465-CV, 2015 WL 9261278 (2d Cir. Dec. 18, 2015) (employer's response was remedial, prompt, and effective when, in response to anonymous racially offensive note, management called security to conduct investigation; held meetings to convey that such language would not be tolerated; conducted training course; and emphasized that any employee found to be responsible would be fired); Chambo v. Time Warner Cable, N.Y. City, No. 11 CIV. 09555 AJN, 2013 WL 7904304, at *10 (S.D.N.Y. Dec. 20, 2013) (employer took appropriate remedial action by investigating allegations and advising all involved to abide by company policy, "thereby effectively end[ing] the harassment"); Wahlstrom v. Metro-N. Commuter R. Co., 89 F. Supp. 2d 506, 525-26 (S.D.N.Y. 2000)

(employer's response was prompt and effective when alleged harasser was suspended without pay for 45 days and required to attend a training course).

    B.    <u>Retaliation</u>

To prevail on her retaliation claim under Title VII, plaintiff must prove that "but for" retaliatory bias, she would not have been fired. <u>Puglisi v. Town of Hempstead, Dep't of Sanitation, Sanitary Dist. No. 2</u>, 545 F. App'x 23, 25-26 (2d Cir. 2013). Defendants contend that she cannot meet this burden because a jury would have to find that she was fired for nondiscriminatory reasons: she served two entrees without charging for them and Wine Bar had to reduce wait staff due to financial difficulties. Defendants point to the order ticket and bill for the two entrees, as well as evidence that Wine Bar employed fewer front-of-house staff in early 2013 than in late 2012. Defs.' Mot., Ex. S (ECF No. 45-22); Defs.' Mot., Ex. U (ECF No. 45-24); Defs.' Mot., Ex. V (ECF No. 45-25).

In response, plaintiff points to the very close temporal proximity between the day she provided Wine Bar with a letter documenting her complaints (November 3) and the day she was terminated (November 13, her first day back to work after taking time off for a family emergency). She has denied giving away food to customers. Pl.'s Dep. (ECF No. 47-3) at 120-22. The order ticket for the entrees in question is undated and therefore

14

connected to the bill only by defendants' testimony.  In addition, plaintiff has presented evidence that the restaurant's computer system was not reliable and would frequently freeze up or go offline, such that orders would be submitted by handwritten ticket.  Pl.'s Dep. (ECF No. 47-3) at 136-37; Pl.'s Opp., Ex. D (ECF No. 47-6) at 73; Pl.'s Opp., Ex. J (ECF No. 47-12) ¶ 10.  She also offers evidence that Chris Joy, a co-worker, was suspected in connection with the missing food and money, yet he remained employed by Wine Bar.  Pl.'s Dep. (ECF No. 47-3) at 121; Pl.'s Opp., Ex. L (ECF No. 47-14) ¶ 10.  As to defendants' contention that plaintiff was terminated because of financial difficulties, plaintiff points out that defendants hired 11 or 12 new employees between November 2012 and March 2013.  Pl.'s Opp., Ex. P (ECF No. 47-18) ¶ 8; Pl.'s Opp., Ex. Y (ECF No. 47-27).

   Viewing the record in a light most favorable to the plaintiff, a jury could find that the defendants' nondiscriminatory reasons are a pretext for retaliation.  See Zann Kwan, 737 F.3d at 945-57 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.  From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.").  The conclusion that

plaintiff has presented enough evidence to raise a triable issue of fact as to pretext is consistent with the "caution" that courts must exercise in granting summary judgment for employers in discrimination cases when "the merits turn on a dispute as to the employer's intent." Gorzynski, 596 F.3d at 101.

    C.    <u>Defamation</u>

Plaintiff contends that after she was fired, defendants defamed her by telling other employees she was fired for stealing. Defendants contend that the statement cannot support a defamation claim because it is true, see Cweklinsky v. Mobil Chem. Co., 267 Conn. 210, 228-29 (2004), and within the scope of the qualified privilege for intracorporate communications, see Gambardella v. Apple Health Care, Inc., 291 Conn. 620, 630 (2009). These defenses raise genuine issues of material fact. If a jury were to find that the statement is false and the defendants acted recklessly - findings that are not precluded by the evidence in the record - plaintiff would be entitled to a verdict in her favor on this claim.

III. <u>Conclusion</u>

Accordingly, the motion for summary judgment [ECF No. 45] is denied.

So ordered this 31st day of March 2017.

                                            /s/ RNC
                                      Robert N. Chatigny
                               United States District Judge